UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 20-10184-RGS

UNITED STATES OF AMERICA

v.

LUIS ANGEL NARANJO RODRIGUEZ

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

June 22, 2022

STEARNS, D.J.

Defendant Luis Angel Naranjo Rodriguez is indicted for offenses related to his involvement in a credit card skimming scheme targeting gas stations throughout New England. On November 17, 2019, Naranjo Rodriguez was arrested at an early morning hour by a Concord police officer at the Rotary Gulf gas station in Concord, Massachusetts, on suspicion of credit card skimming. Naranjo Rodriguez now seeks to suppress evidence seized from his person and automobile following the arrest, alleging various Fourth Amendment violations. The court held an evidentiary hearing on April 20, 2022. Upon review of the parties' briefs and the transcript of the hearing, the court will deny the motion to suppress.

## FACTUAL BACKGROUND

In April of 2019, Concord police began an investigation after concealed credit card skimming devices were found in pumps at local gas stations. Hr'g Tr. at 4:13-17.[1] On April 19, 2019, Sergeant Timothy Landers received an email from a supervisor stating that "two skimming devices were located at the Rotary Gulf" gas station in Concord and ordering "patrol officers [to] keep an extra eye out for suspicious activity, person(s), and vehicles around [local] gas stations." Ex. 1. On April 22, 2019, Landers received an "officer awareness" bulletin, giving a more detailed description of the skimming devices found at the Rotary Gulf gas station and asking officers to "make note of any suspicious activity at gas stations or ATMs particularly during the evening and overnight hours." Ex. 2. Landers received a supplementary bulletin the following day giving information about the suspects believed responsible for planting the skimming devices. Ex. 3. Several months later, on September 13, 2019, Landers received an email from a supervisor reporting that another skimming device had been found at the Rotary Gulf

---

[1] A skimming device, when installed on a credit card reader, surreptitiously gleans credit card and PIN data from persons who utilize the reader to make purchases. Hr'g Tr. at 4:18-5:1. The data can then be used to create bogus credit cards linked to the victims' accounts. *Id.* at 5:3-8.

2

gas station and instructing patrol sergeants to "remind officers to continue checks of all gas stations for suspicious activity/vehicles." Ex. 4.

Prior to April of 2019, Landers testified that patrol officers would "[o]ccasionally" check the Rotary Gulf gas station for suspicious activity. Hr'g Tr. at 14:10. After the credit card skimming investigation began, however, Landers and other officers checked in on the Rotary Gulf station more than ninety times before Naranjo Rodriguez's arrest. *Id.* at 14:11-17.

Shortly after 1:00 a.m. on November 17, 2019, while patrolling on Route 2 in Concord, Landers saw a vehicle with out of-state license plates parked at a gas pump at the Rotary Gulf station. Def.'s Mem. (Dkt # 46) at 2. Knowing that the station normally shut down at 11:00 p.m., Landers pulled into the service area and parked behind the vehicle. *Id.* He observed one person sitting in the driver's seat. *Id.* Although the gas pumps gave off some light, the station was dark and clearly closed for business. Hr'g Tr. at 62:7-16.

Landers got out of his vehicle and encountered Naranjo Rodriguez standing by a gas pump. Def.'s Mem. at 2. Landers asked Naranjo Rodriguez what he was doing. When Naranjo Rodriguez turned to face him, Landers observed that he was wearing black latex gloves and holding a wallet and credit card. *Id.* Naranjo Rodriguez told Landers that he was getting gas. *Id.*

3

Landers ordered Naranjo Rodriguez to step away from the pump, but he did not comply. *Id.* at 2-3. When Landers repeated his order, Naranjo Rodriguez responded in Spanish which Landers did not understand. *Id.* at 3. Landers then grabbed Naranjo Rodriguez by the arm, pulled him away from the pump, and conducted a pat-frisk. *Id.* During the frisk, Landers retrieved an identification card from Naranjo Rodriguez's pocket. *Id.* Landers directed Naranjo Rodriguez to sit on the curb and called for backup. *Id.*

Three other officers arrived at the scene. *Id.* Detective Keith Harrington noticed keys inside the door of the pump where Naranjo Rodriguez had been standing. The door of the pump was ajar, leading Harington to believe that Naranjo Rodriguez had been caught "attempting to put a skimming device on the back of" the pump. Hr'g Tr. at 87:12-18; Ex. 7. The officers then formally placed Naranjo Rodriguez under arrest and locked him in the back of a cruiser. Def.'s Mem. at 4.

Another officer ordered the driver – identified as Javier Gamez Rodriguez – to exit the vehicle. *Id.* Landers then looked under the driver's seat where he observed a credit card skimming device. *Id.* Gamez Rodriguez was also arrested and placed in the back of a cruiser. *Id.*

Detective Harrington then searched the vehicle. *Id.* He discovered three additional skimming devices and several pairs of black latex gloves in

the glovebox. *Id.* He also found seven credit cards listing seven different names, a set of keys, and three cellphones. *Id.* The vehicle was towed to the Concord police station where the officers inventoried the items found in the vehicle. *Id.*; Hr'g Tr. at 98:21-22.

At the station, Gamez Rodriguez told the officers that he and Naranjo Rodriguez were staying in a "Hotel 6 [sic] somewhere in Boston." Def.'s Mem. at 5. A call to the Motel 6 in Framingham revealed that Naranjo Rodriguez was registered as a guest. *Id.* Police then obtained a warrant to search the motel room for "evidence of credit card skimming devices." *Id.* at 6; Ex. 13. The warrant authorized the officers to seize, among other items, any computers or other electronic devices, but it did not authorize the search of the contents of the devices themselves. Ex. 13; Hr'g Tr. at 168:20-169:3. Pursuant to the warrant, officers searching the motel room seized $1,470 in cash, a hot glue gun, wire cutters and wire remnants, a soldering tool, receipts, two SIM cards (hidden between the pages of a Bible), two Apple watches, two iPads, and a Dell laptop computer. Def.'s Mem. at 6.

During the execution of the warrant, Detective Kallie Koppenal opened the Dell laptop, which "caused the screen to awake" and display the username "Luis A. Naranjo." Hr'g Tr. at 149:1-14; Ex. 14C. Koppenal testified that she lifted the lid of the laptop to look for "really small pieces of

5

evidence . . . that would pertain to gas pump skimming, and also documentation." Hr'g Tr. at 149:22-24. She later obtained a warrant to search the hard drive of the computer. *Id.* at 153:19-154:7. Detective Koppenal testified that she would have seized the computer and applied for a warrant to search it regardless of what she saw when she opened it. *Id.* at 169:23-170:9.

## DISCUSSION

The Fourth Amendment forbids government officials from conducting "unreasonable" searches and seizures. U.S. Const. amend. IV. Police officers may not search an individual (or areas in which an individual has a legitimate expectation of privacy) without a warrant unless the search falls within a "certain reasonable exception[]." *Kentucky v. King*, 563 U.S. 452, 459 (2011).

### (1) *Terry* Seizure

Naranjo Rodriguez first argues that Landers's seizure of his person – by grabbing his arm and pulling him away from the gas pump – was unlawful because Landers did not have reasonable suspicion that Naranjo Rodriguez was involved in criminal activity. The court disagrees. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court ruled that the Fourth Amendment "permits the police to detain temporarily a suspect on a reasonable suspicion,

supported by articulable facts, that the suspect had committed or is about to commit a crime." *United States v. Scott*, 270 F.3d 30, 41 (1st Cir. 2001). "The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  In determining whether an officer had reasonable suspicion, the court is to consider "the totality of the circumstances – the whole picture." *United States v. Cortez*, 449 U.S. 411, 418 (1981).

Here, Landers's suspicion was well-grounded on articulable facts that, taken together, clearly indicated that Naranjo Rodriguez was engaged in criminal activity.  Over an eight-month period, Concord Police had investigated multiple incidents of credit card skimming devices being planted in gas pumps at the Rotary Gulf station.  Landers and other officers had been made aware of these incidents and had been instructed to keep a sharp eye on the stations, particularly the Rotary Gulf.[2]  On the night in

---

[2] The court rejects Naranjo Rodriguez's claim that the government's reasonable suspicion argument is premised on an overly generous reading of the "collective knowledge" doctrine. *See United States v. Cook*, 277 F.3d 82, 86 (1st Cir. 2002) ("[W]here law enforcement officers are jointly involved in executing an investigative stop, the knowledge of each officer should be imputed to others involved in executing the stop."). The court disagrees. In the better view, the collective knowledge doctrine applies to "horizontal" as well as "vertical" relationships. In a horizontal relationship, two or more officers acting jointly may have individual pieces of information that when

7

question, Landers observed a car with out-of-state license plates parked after business hours at a pump at the darkened Rotary Gulf station in which a skimming device had been previously detected. He also saw Naranjo Rodriguez fiddling with the pump while wearing latex gloves, a common tool-of-the-trade of professional burglars and thieves.

**(2) Pat-Frisk**

Naranjo Rodriguez next challenges Landers's pat-frisk of his person, contending that Landers did not have reasonable suspicion that he was armed and dangerous. This is true insofar as it goes. "After a valid *Terry* stop, a pat-frisk for weapons is also permissible where 'the officer is justified in believing that the person is armed and dangerous to the officer or others.'" *United States v. McKoy*, 428 F.3d 38, 39 (1st Cir. 2005), quoting *United States v. Romain*, 393 F.3d 63, 71 (1st Cir. 2004). "It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks has been met." *Id*. An officer's decision whether to conduct a frisk must be "responsive to the emerging tableau – the circumstances

---

assessed as a collective whole amount to the requisite level of cause. *See United States v. Fiasconaro*, 315 F.3d 28, 36 (1st Cir. 2002) (in a horizontal application of the doctrine, the focus is on the aggregate knowledge possessed by all of the officers involved in the investigation). To a large degree, however, this is of no special import. It is clear from the evidence that Landers was *personally* aware of the previous skimming device incidents at the Rotary Gulf gas station. *See* Exs. 1-4.

originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed." *United States v. Am*, 564 F.3d 25, 32 (1st Cir. 2009).

As suspicious as were the circumstances, and considering that Landers was at least momentarily outnumbered at the scene and facing a man who he described as having a "muscular" physique, *see* Hr'g Tr. at 24:1-2, and who was initially unresponsive to his commands, there is little if any evidence that that Naranjo Rodriguez was possibly armed or that Landers was in any imminent danger.[3] Credit card skimming is not a crime ordinarily considered dangerous *per se*, unlike say robbery, and Landers never testified to being in fear or feeling it necessary to unholster his weapon. S*ee* Hr'g Tr. at 73:8-10. However, even assuming that the frisk was improper, the only evidence it disclosed was Naranjo Rodrigues's identity. Whether treated as an issue of inevitable discovery (Naranjo Rodriguez would have been required to disclose his name and basic biographical information upon being booked later at the station, *see United States v. Almeida*, 434 F.3d 25, 28 (1st

---

[3] Naranjo Rodriguez's inability to effectively communicate in English cannot translate into a finding that he posed any threat as a result. *Cf. United States v. Manzo-Jurado*, 457 F.3d 928, 936-937 (9th Cir. 2006) ("[A]n individual's inability to understand English will not justify an investigatory stop because the same characteristic applies to a sizable portion of individuals lawfully present in this country.").

9

Cir. 2006)), or as one of a lack of a reasonable expectation of privacy, there is no fruit of the frisk to suppress.[4]

## (3) Automobile Search

Naranjo Rodriguez contests the officers' warrantless search of the vehicle, characterizing it as an improper protective sweep. The court disagrees. "If there is probable cause to believe a vehicle contains evidence of criminal activity, [police may conduct] a search of any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009). Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir. 1987), quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Here, Harrington's observation of the keys in the open door of the inactive gas pump and Landers's observation of a skimming device under the driver's seat of the car, when collectively evaluated in the

---

[4] "The 'body' or identity of a defendant . . . in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). *Cf. Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 191 (2004) ("[I]n every criminal case, it is known and must be known who has been arrested and who is being tried.").

light of the previous incidents of skimming at the station and the circumstances of Landers's late-night encounter with Naranjo Rodriguez, provided the information necessary to establish probable cause to arrest Naranjo Rodriguez and Gamez Rodriguez and to search their vehicle for evidence of illegal skimming.[5]  *Cf. United States v. Martinez*, 2012 WL 5842601, at *3 (D. Mass. Nov. 16, 2012) (warrantless vehicle search for suspected evidence of burglary was appropriate given "the proximity of the [vehicle] to [the burglarized home,] . . . the fact that the engine was running, and the presence of [the defendant's accomplice] apparently hiding in the rear").

### (4) Computer Search

Finally, Naranjo Rodriguez contends that when Detective Koppenal lifted the lid of the laptop during the search of the motel room, she exceeded the scope of the warrant by conducting an illegal search of the "contents" of the computer itself.  The government argues that the information displayed

---

[5] The further search of the impounded vehicle at the station was a lawfully conducted inventory search carried out in accordance with the Concord Police Department's written inventory policy. Thus, no warrant was required.  *See Colorado v. Bertine*, 479 U.S. 367 (1987); s*ee also United States v. Davis*, 909 F.3d 9, 17 (1st Cir. 2018) ("[T]he Fourth Amendment . . . permits police to conduct an 'inventory search' to identify the contents of the vehicle without first obtaining a warrant."); Ex. 15 (Concord Police Department Motor Vehicle Inventory Policy).

on the screen of the laptop was lawfully observed pursuant to the plain view doctrine.  There is traction to the government's argument.  "A warrantless seizure is lawful under the plain view doctrine as long as (i) the police officer who effects the seizure lawfully reaches the vantage point from which he sees an object in plain view; (ii) probable cause exists to support his seizure of that object; and (iii) he has a right of access to the object itself." *United States v. Sanchez*, 612 F.3d 1, 4-5 (1st Cir. 2010).

Even assuming that the display screen of a laptop is a protected "content" of a hard drive, Detective Koppenal was permitted by the warrant to open the lid of the computer.  Police executing a valid search or arrest warrant may seize evidence encountered in plain view.  *See United States v. Robles*, 45 F.3d 1, 6 (1st Cir. 1995); *United States v. Aguirre*, 839 F.2d 854, 858-859 (1st Cir. 1988).  The intensity of a warrant search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982).  Any unlocked or locked container on the premises that could reasonably conceal an item described in the warrant may be opened and searched. *United States v. Giwa,* 831 F.2d 538, 543-544 (5th Cir. 1987).  *See also United States v. Micheli*, 487 F.2d 429, 431 (1st Cir. 1973) (briefcase); *People v. Gall*, 30 P.3d 145, 153 (Colo. 2001) (*en banc*) (officers authorized to seize "any and all

written or printed material" permissibly seized desktop and laptop computers "reasonably likely to serve as 'containers' for writings, or the functional equivalent of 'written or printed material'"). It was not unreasonable for Detective Koppenal to believe that physical evidence of credit card skimming would be found in the laptop case (as it was between the covers of the motel room's Gideon Bible).

## ORDER

For the foregoing reasons, Naranjo Rodriguez's motion to suppress is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE